UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| MARY BETH VANDERGRAFF,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 4:24-CV-44 JD |

**OPINION AND ORDER**

Plaintiff Mary Vandergraff sought disability insurance benefits under Title II of the Social Security Act, alleging that she became disabled in December 2011. This is Ms. Vandergraff's third appeal: her claims have been rejected twice, each time leading to a review by different Administrative Law Judges, who concluded that Ms. Vandergraff was not disabled. Both times she appealed to this court, and both times the court remanded for further consideration. Upon the last remand, a third ALJ also denied her claims. The Appeals Council denied review, and Ms. Vandergraff again seeks judicial review in this Court. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

**A.  Standard of Review**

The Appeals Council's decision is considered the final decision of the Commissioner for purposes of judicial review. *See Arbogast v. Bowen*, 860 F.2d 1400, 1402–03 (7th Cir. 1988). However, where, as here, the Appeals Council explicitly adopted the opinion of the ALJ, as modified, the Court reviews the decision of the ALJ. *Id*.

This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20

C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### C. The ALJ's Decision

Ms. Vandergraff has filed two prior civil actions on this application. She first applied for disability insurance benefits in January 2013, alleging disability beginning in September 2011 (R. at 152–53). This application was ultimately denied by the Commissioner, resulting in an appeal to this court and a remand in 2018 by Magistrate Judge John Martin in case number 4:17-cv-6. (R. at 1038–46).

In February 2019, a different ALJ conducted another hearing (R. at 9501–006), and issued an unfavorable decision (R. at 879–99). In January 2023, upon review of the appeal, Judge Damon Leichty again remanded the case to the Commissioner for further administrative proceedings (R. at 3062–69). In December 2023, a third ALJ conducted an administrative hearing (R. at 2984–3028), and issued an unfavorable decision (R. at 2952–72). The January 2024 decision now stands as the final decision of the Commissioner.[1]

At the hearing, Ms. Vandergraff testified that she has difficulty getting around in the morning due to changes in her sleep cycle, which began about six years ago, causing her to be awake until 2:00 to 5:00 in the morning. As a result, she sleeps until later in the day and has a

---

[1] Unless otherwise indicated, this order concerns only the last administrative hearing and the last ALJ's decision.

4

slow start after waking up. (R. at 2993–94.) According to Ms. Vandergraff, she experiences morning fogginess and difficulty concentrating, making it unsafe for her to drive before noon. She has been diagnosed with post orthostatic tachycardia syndrome fibromyalgia, and chronic fatigue syndrome, and since a collapse in 2011, she has been unable to work full-time. (R. at 2996.) Following the collapse, she worked for about a year, two hours per day on weekdays (R. at 2997). Ms. Vandergraff said she's very limited in what she can do at home, and she spends 80% or more of her day resting. (R. at 3016–17.) She has undergone rehabilitation multiple times to improve her physical capabilities, such as standing longer or doing more household tasks. (R. at 3017–18.)

Ms. Vandergraff also testified about her mental health. She reported having difficulty maintaining concentration and persistence, even when performing light tasks on the computer, often needing to change positions and take breaks every 15 to 20 minutes. (R. at 2998.) She said she experiences challenges in focusing and often loses her train of thought, requiring her to use tools like Google to find words she cannot recall. (*Id*.) She mentioned that her memory has deteriorated, making it difficult for her to recall past events or durations accurately. (R. at 3017.)

On January 26, 2024, the ALJ issued a decision, finding that Ms. Vandergraff was not disabled. (R. at 2972.) In doing so, the ALJ employed the customary five-step analysis. First, the ALJ found that Ms. Vandergraff "engaged in substantial gainful activity . . . from the alleged onset date to December 27, 2013." (R. at 2957.) At Step 2, the ALJ determined that Ms. Vandergraff suffered from the following severe impairments: "chronic fatigue syndrome; fibromyalgia; late effects of remote fifth metatarsal healed fracture; post orthostatic tachycardia syndrome (POTS); syringomyelia of cervical spine; and Raynaud's phenomenon." (R. at 2958.)

5

Next, using the "special technique" provided in 20 C.F.R. § 404.1520a,[2] the ALJ identified and evaluated the severity of Ms. Vandergraff's mental impairments. The ALJ found that Ms. Vandergraff's mental impairments include affective disorder and anxiety. The ALJ believed that these impairments are non-severe as they do not cause more than minimal limitation in performing basic mental work activities. (R. at 2958.) Still, relying on the examination by a consultative examiner, the ALJ found that Ms. Vandergraff suffered mild functional limitations in: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace.[3] (R. at 2959–60.) The ALJ found no limitations in adapting or managing herself. (R. at 14.)

Before step 4, the ALJ determined Ms. Vandergraff's residual functional capacity ("RFC"),[4] finding that she can

> perform lifting/carrying of 20 pounds occasionally and 10 pounds frequently; 6 hours sitting in an eight-hour workday and 4 hours standing/walking in an eight-hour workday; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never crawl; frequently handle, and finger; frequently reach in all directions; frequently reach overhead up to 5 pounds; occasionally push/pull with the upper and lower extremities; no exposure to extreme temperatures, no exposure to hazards, including moving mechanical

---

[2] "The special technique requires the ALJ to first determine whether a claimant has a medically determinable mental impairment(s). § 404.1520a(b)(1). This is done by evaluating the claimant's 'pertinent symptoms, signs, and laboratory findings.' *Id*. If the claimant has a medically determinable medical impairment, the ALJ must document that finding and rate the degree of function limitation in four broad 'functional areas': activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3)" These areas are known as the 'B criteria.'" *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013) (other citations omitted).

[3] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

[4] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

>    machinery and high exposed places; no exposure to vigorous or course vibrations and can tolerate moderate noise levels.

(R. at 2961.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. The VE testified that a person with those restrictions could do Ms. Vandergraff's former job as administrative assistant. The VE also said that there were jobs available in significant numbers in the national economy for such an individual: storage facility clerk, small parts assembler, and information clerk. (R. at 3024.) The ALJ then followed up with another hypothetical, keeping the same conditions as in the RFC, but restricting the hypothetical person to sedentary exertion levels. Once again, the ALJ found that jobs existed in the national economy. Finally, the ALJ added pace-related restrictions to both the first and second hypotheticals: this individual also required work free of fast paced production and quota, meaning no tandem work assignments, machine regulated work or hourly production requirement. In response, the VE said that the jobs identified so far wouldn't be affected. (R. at 3025–26.) Even so, according to the VE, "[i]f the individual were off task due to chronic fatigue and/or pain and this equaled 15 percent of the workday or there was the need to lie down for 15% of the workday," such requirements would preclude work. In fact, if the individual were off task 10% or more, or would be absent for more than one day a month, no work would be available to such an individual. (R. at 3025–26.)

In her decision, the ALJ considered Ms. Vandergraff's subjective complaints of pain and fatigue but found them not entirely consistent with the medical evidence and other evidence in the record. (R. at 2962.) The ALJ acknowledged that fibromyalgia and chronic fatigue syndrome do not always produce positive objective findings but emphasized the importance of considering objective evidence alongside subjective complaints. (*Id*.) The ALJ gave great weight to the

opinion of Dr. Steven Golub, a medical expert, ultimately concluding that Ms. Vandergraff was not disabled. (R, at 2967, 2971.) The ALJ gave no weight or little weight to the opinions of Ms. Vandergraph's treating physicians.

**C. Discussion**

In her appeal, Ms. Vandergraff argues that the ALJ committed several errors. She argues that the ALJ did not follow the district court's instructions from two prior appeals to consider fatigue and pain in the RFC and to address supporting objective evidence, including treating physician medical opinions, dismissing each without sound rationale. She also submits that the ALJ failed to incorporate her nonexertional limitations into the RFC, such as difficulties with focusing and concentrating. The Court will start its analysis with the latter contention.

**(1)** *Mental Functioning Limitations*

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). 20 C.F.R. § 404.1545(a)(2). ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe" . . . when we assess your residual functional capacity.") "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.* Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id*.

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental

8

> limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate concentration, persistence, and pace, and adapting and managing oneself are required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

At Step 2 of the sequential analysis, the ALJ found that Ms. Vandergraff suffered mild functional limitations in: understanding, remembering, or applying information;[5] interacting with

---

[5] Understanding, remembering, or applying information "refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(1).

9

others;[6] and concentrating, persisting, or maintaining pace.[7] (R. at 2959–60.) Despite these findings, the ALJ's hypothetical question to the VE and the RFC are silent about these limitations, except for maintaining pace, and the record does not suggest that the VE independently reviewed the medical record so as to be clearly aware of these limitations. The ALJ's silence about the nonexertional limitations is an unfortunate error—perhaps resulting from the ALJ's focused attempt to avoid the Agency's previous errors relating to the subjective symptom analysis and the treating physician rule—but it is an error all the same.[8]

The ALJ's own decision states at the end of the Step 2 analysis that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. at 2960.) In a boilerplate fashion, the ALJ added that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" (*id.*), but she provided no such assessment, although she did refer to the pace limitations in the third hypothetical.

---

[6] Interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(2).

[7] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

[8] Previous decisions did not address Ms. Vandergraff's mental health because, at the time, she had no mental health diagnoses. (R. at 2958; *see also* R. at 2959 noting that Ms. Vandergraff was diagnosed with depression and adjustment disorder with anxiety in 2019).)

10

Without incorporating the other mental functioning limitations, the RFC assessment is incomplete. Perhaps the ALJ believed that the mild nature of the limitations had no bearing on Ms. Vandergraff's ability to work, but there's no way for the Court to know. In other words, the Court is unable to trace the ALJ's reasoning to ensure that it is free of error. As a result, the VE's testimony regarding available jobs cannot be relied on as substantial evidence. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). To the extent that Ms. Vandergraff may have mild mental functioning limitations, the VE was not informed of them and based her opinion on an incomplete RFC. The Court cannot say that this error was harmless. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (an error is harmless only if the reviewing court can "predict with great confidence what the result of the remand will be").

The ALJ's failure to include Ms. Vandergraff's mild limitation in concentration and persistence as well as in interacting with others is significant. First, the VE testified that being off task more than 10% of a workday or missing work more than once a month would be job-prohibitive. As a result, it's important to know to what extent, if at all, the ALJ believed Ms. Vandergraff's limitations in concentration and persistence would interfere with her ability to work gainfully. Second, the VE also testified that the hypothetical person with Ms. Vandergraff's stated limitations could do her past work as administrative assistant and could also work as a storage facility clerk or information clerk. But according to the Dictionary of Occupational

Titles, each of these jobs requires consistent interactions with others. *See* https://occupationalinfo.org/16/169167010.html ("Administrative Assistant: . . . Coordinates collection and preparation of operating reports, such as time-and-attendance records, terminations, new hires, transfers, budget expenditures, and statistical records of performance data. Prepares reports including conclusions and recommendations for solution of administrative problems. Issues and interprets operating policies. Reviews and answers correspondence. May assist in preparation of budget needs and annual reports of organization. May interview job applicants, conduct orientation of new employees, and plan training programs.") (last visited August 4, 2025); https://occupationalinfo.org/29/295367026.html ("Storage-Facility Rental Clerk: . . . Assists customers in selection of storage unit size according to articles or material to be stored.") (last visited August 4, 2025); https://occupationalinfo.org/23/237367018.html ("Information Clerk: Provides travel information for bus or train patrons: Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. . . .") (last visited August 4, 2025). The VE should have been told about Ms. Vandergraff's mental functioning limitations, or the ALJ should have explained why the limitations are inconsequential, so as to be sure that the jobs the VE proposed are ones that Ms. Vandergraff can actually do. *See Diaz v. Berryhill*, No. 2:17-CV-314, 2018 WL 4627218, at *6 (N.D. Ind. Sept. 27, 2018) ("'If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion so that the court can follow the basis of her reasoning.'") (quoting *Muzzarelli v. Astrue*, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011)); *see also Colleen G. v. Kijakazi*, No.

23 C 0357, 2024 WL 216666, at *10 (N.D. Ill. Jan. 19, 2024) (remanding because the Court could not tell what effect plaintiff's mild limitations would have on her work performance).

In countering Ms. Vandergraff's arguments, the Commissioner insists that the ALJ considered her allegations of impaired concentration, and Ms. Vandergraff has not pointed to any evidence that the ALJ overlooked or mischaracterized to undermine the ALJ's conclusions. The Commissioner also submits "the ALJ found [Ms. Vandergraff] only mildly limited in the broad functional area of concentrating, persisting, or maintaining pace, and she supported this conclusion with the opinion of the psychological examiner, who concluded that Plaintiff had the cognitive ability and motivation to persist in a work setting." (Def.'s Resp. Br., DE at 24 at 12.)

There are several flaws in the Commissioner's argument. First, as explained above, it's insufficient for the Commissioner to argue that the mental functioning impairments can be excluded because they were "only" mild. *See also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (holding that the ALJ erred by failing to include both mild and moderate limitations in the RFC and hypothetical to the VE, and emphasizing that even mild limitations in understanding, remembering, and carrying out instructions must be accounted for alongside moderate CPP limitations). Second, while the consultative psychological examiner did say "that the claimant appeared to have the cognitive ability and motivation to be able to persist in a vocational setting," the opinion is incomplete because he qualified his statement with the observation "that the claimant's medical records would need to be assessed due to reports of chronic fatigue and pain." (R. at 2959.) More importantly, though, as explained above, persistence is not the same as concentration or interacting with others, and these limitations remain unaccounted for. Moreover, the phrase "persisting in a vocational setting" provides no guarantee that Ms. Vandergraff is capable of persisting in any work setting, especially one that

13

requires skills such as those of administrative assistant. (*See* R. at 2970 (ALJ indicating that this job was classified as SVP 7).)

### (2) *Remaining Contentions*

Ms. Vandergraff argues that the ALJ did not follow the district court's instructions from two prior appeals to consider fatigue and pain in the RFC and to address supporting objective evidence, including treating physician medical opinions, dismissing each without adequate rationale. Given the Court's ruling concerning the ALJ's omission of the mental functional limitations from the RFC, the Court declines to address this argument further, as the RFC analysis may change on remand. Nevertheless, the Court notes what appears to be the ALJ "playing doctor."

The ALJ observed twice in her decision that Ms. Vandergraff has exhibited a "normal demeanor and behavior" at some medical appointments. According to the ALJ, this is evident because her providers have "not regularly noted [her] as dozing off in the waiting room," among other things. (R. at 2968, 2969.) In addition, the ALJ stressed that "[Ms. Vandergraff] also is able to get to her doctor visits independently and there are not regular notes of the claimant being accompanied/driven by someone to her appointments." (R. at 2968.) These observations are curious, to say the least.

The ALJ does not point to any evidence suggesting that doctors regularly observe patients in the waiting room and document their conclusions, and the idea of that seems puzzling. *Cf. Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (questioning the propriety of the ALJ's reliance on a medical provider's observations of the claimant's functional capacity in the waiting room and after he left appointment, particularly when such observations fall outside the scope of

a formal clinical examination). The same is true for the ALJ's conclusion that Ms. Vandergraff did not come with anyone to her appointments. After all, how would the ALJ know whether people are available to drive and accompany Ms. Vandergraff to her medical appointments, and that she has foregone their services because she feels well enough? These observations add nothing to validate the ALJ's decision yet muddy the waters along the way. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

One other thing. Ms. Vandergraff contends that her case should not be remanded; instead she should be awarded benefits because the Commissioner's conduct on remands has been obdurate or in violation of the law-of-the-case doctrine. The Court disagrees. While it's unfortunate that the ALJ erred in fashioning the RFC, there's no indication at all that she was disregarding the district court. To the contrary, the ALJ acknowledged Judge Leichty's directives several times in her decision. (R. 2962, 2965.) In addition, contrary to Ms. Vandergraff's assertions, the ALJ did consider her complaints of fatigue. For example, she recognized her testimony that she had difficulty bathing and caring for her hair due to fatigue and could do only a small amount of vacuuming and other household tasks. (R. at 2963.) According to the ALJ, although Ms. Vandergraff testified that she spent 80% of her day resting, she never mentioned to her doctors that she needed that level of rest. The ALJ also recounted that Ms. Vandergraff went to the ER complaining of fibromyalgia and CFS and was found to be dehydrated. (R. at 2964.) The ALJ noted that in March 2017, she reported to her doctor that she had been suffering from extreme fatigue for the previous two weeks, but was markedly improved by December 2017 as a

result of a new prescription. (R. at 2965.) More generally, the ALJ recognized that there were times Ms. Vandergraff complained of fatigue and pain to her doctors, and times she didn't. (R. at 2968.) The ALJ also noted that Dr. Smith believed she could not work full time due to her fatigue. (R. at 2968–69.) All of this demonstrates that the ALJ did not ignore the district court's instructions. Of course, as explained elsewhere in this order, the ALJ failed to incorporate the mental functioning limitations into the RFC, but that does not mean that the ALJ ignored Ms. Vandergraff's fatigue-related complaints. In addition, Judge Leichty's order did not address mental limitations, as they were not at issue in that appeal. Therefore, it cannot be said that an award of benefits is warranted under the law-of-the case doctrine. Moreover, an award of benefits is appropriate only if "the resulting record supports only one conclusion," *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011), which is not the case here. And as the Seventh Circuit held in *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005), obduracy alone is not grounds for remand. Accordingly, the Court will not award benefits to Ms. Vandergraff but will remand the case instead.

### E.  Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 7, 2025

                                                        /s/ JON E. DEGUILIO  
                                                        Judge  
                                                        United States District Court